UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| BRIGHTON COLLECTIBLES, INC., a Delaware Corporation, | ) ) ) | Case No.: 11cv00637 AJB (WVG) |
| Plaintiff, | ) ) | ORDER |
| v. | ) ) ) | DENYING PLAINTIFF'S MOTION FOR PERMANENT INJUNCTION. |
| PEDRE WATCH COMPANY, INC., a New York Corporation, et al., | ) ) ) | |
| Defendants. | ) ) ) | |

Presently before the Court is Plaintiff Brighton Collectibles, Inc.'s (Plaintiff) Motion for Permanent Injunction to enjoin Defendant, Pedre Watch Company, Inc. (Defendant) from future infringement of certain Brighton watches. (Doc. No. 96.)

## I.     BACKGROUND

Plaintiff commenced this action on March 30, 2011 alleging a claim against Defendant for copyright infringement. (Doc. No. 1.) Plaintiff designs and manufactures women's fashion accessories, including watches, that sell under the trademark "Brighton." Defendant is a watch manufacturer and importer based in New York. The Complaint alleged that Defendant's "Cimarron" watch infringed on Plaintiff's copyrighted "Laguna" watch design. (Doc. No. 1)

In 1998, the parties were involved in another litigation over Defendant's alleged infringement of Plaintiff's "Daytona" watch design. (Doc. No. 96 at 3.) Defendant contends

that it had never heard of Brighton nor seen Brighton designs until Plaintiff sent its cease-and-desist letter in March 1998.  Defendant had obtained the allegedly infringing watch from Full Field Industrial Limited, a Hong Kong company.  Defendant voluntarily ceased selling the allegedly infringing watch after Brighton made its objections known. (Doc. No. 102 at 2.)  However, Brighton still commenced an action in October 1998. According to the Defendant, that action settled to "avoid future litigation costs," and the parties agreed that the settlement was not to be construed as an admission of liability. (*Id*)

In 2008, Defendant purchased the Cimarron watch design, the subject of the current case, from its supplier, Universe Watch Trading Co., Ltd. in Hong Kong.  In selecting the design, Defendant's president, Jill Kiviat, specifically told the supplier she "did not want to buy anything that was like Brighton." (*Id*. at 5.)  The supplier had informed her the Cimarron design was made for a South American customer and was not being sold in the United States. (*Id*.)  At that time, Plaintiff had not offered the Laguna for sale for more than four years.  However, Plaintiff argues that "Pedre simply did a cursory scan of Brighton's website, saw that Brighton was no longer selling the Laguna, and pressed forward." (Doc. No. 96 at 6.)

Defendant then made a single sale of 287 watches to its customer, Coldwater Creek. Coldwater Creek then began to advertise the watch in its nationwide catalogs. (Doc. No. 102 at 3-4.)  In September of 2008, Coldwater Creek informed Defendant that Plaintiff alleged the Cimarron infringed on their copyright.  After receiving notice of Plaintiff's claims, Defendant accepted the return of Coldwater Creek's remaining inventory. A total of 181 units were sold to the public, all remaining units were returned to the manufacturer for destruction. (*Id*. at 4.)  Plaintiff commenced an action against Coldwater Creek over the Laguna design.  That action settled. (*Id*.)  Plaintiff then commenced action against Defendant in this Court.

On August 21, 2013, after a three day jury trial, the jury returned with a verdict finding for the Plaintiff.  Specifically the jury found that: (1) Plaintiff owned a valid copyright on the Laguna watch design; (2) Defendant's Cimarron watch copied original

11cv0637

elements of the Laguna watch design; and (3) Defendant's infringement was non-willful. The jury also determined that the appropriate amount of statutory damages was $16,719.50. (Doc. No. 95.)

Plaintiff now seeks a permanent injunction against Defendants to permanently enjoin "Pedre from future infringement of certain Brighton watch designs." (Doc. No. 96. at 1.) The proposed injunction would not only be for the Laguna design, but encompass "all designs in Brighton's 'Watch Me!' Catalog." (*Id.* at 13.) According to Plaintiff, this broad scope is necessary "to prevent *Brighton v. Pedre III.*" (*Id.*)

## II.   LEGAL STANDARD

The Copyright Act provides that a court "may ... grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a).  Thus, injunctive relief to prevent copyright infringement is available as an equitable remedy in the court's discretion. "It goes without saying that an injunction is an equitable remedy." *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 311, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982).  "An injunction should issue only where the intervention of a court of equity 'is essential in order effectually to protect property rights against injuries otherwise irremediable.' " *Id.* at 312, 102 S.Ct. 1798 (quoting *Cavanaugh v. Looney*, 248 U.S. 453, 456, 39 S.Ct. 142, 63 L.Ed. 354 (1919)).

Plaintiffs must meet their burden with respect to the traditional four-part test. Plaintiffs "must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 126 S.Ct. 1837, 1839, 164 L.Ed.2d 641 (2006).  "[T]he decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts." *Id.* at 1841.  Further, the Supreme Court "has consistently rejected invitations to replace traditional equitable considerations with a rule

11cv0637

that an injunction automatically follows a determination that a copyright has been infringed." *Id.* at 392.

## III. DISCUSSION

Plaintiff asks this Court to issue a permanent injunction as it is necessary to "deter future irreparable harm to Brighton." (Doc. No. 96 at 1.) To warrant a permanent injunction, Plaintiff must meet their burden under the traditional four-part test which the Court now considers.

### 1. Irreparable Harm

The first question to address is whether Plaintiff "has suffered an irreparable injury." *eBay*, 547 U.S. at 390. "The concept of irreparable harm, unfortunately, 'does not readily lend itself to definition.'" *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir.2001) (citation omitted). According to the Fifth Circuit, "[b]y definition, 'irreparable injury' is that for which compensatory damages are unsuitable." *Wildmon v. Berwick Universal Pictures*, 983 F.2d 21, 24 (5th Cir.1992). Or, as alternatively stated by the Seventh Circuit, "[o]nly harm that the district court cannot remedy following a final determination on the merits may constitute irreparable harm." *Am. Hosp. Ass'n v. Harris*, 625 F.2d 1328, 1331 (7th Cir.1980). In perhaps combining these two statements, the Tenth Circuit has observed that "irreparable harm is often suffered when the injury can[not] be adequately atoned for in money, or when the district court cannot remedy [the injury] following a final determination on the merits." *Prairie Band*, 253 F.3d at 1250 (internal quotation marks and citations omitted). One district court has also stated that "the irreparable harm requirement contemplates the inadequacy of alternate remedies available to the plaintiff." *Smith & Nephew, Inc. v. Synthes* (U.S.A.), 466 F.Supp.2d 978, 982–83 (W.D.Tenn.2006). Thereby linking the first eBay factor with the second.

Plaintiff's irreparable injury argument centers on the notion that Plaintiff's business model is the creation and sale of "unique designs" with customers expecting the types of pieces "not being worn by every other lady on the block. (*Id.* at 10.) Thus, a proliferation of knockoffs would threaten Plaintiff's entire business. Plaintiff contends that it has

suffered irreparable harm as a result of Defendant's past infringing acts. Moreover, Plaintiff goes on to state there is a continuing threat of future infringement given the "history" between the parties. (Doc. No. 96 at 9-10.)   In support, Plaintiff argues that Defendant has twice infringed upon Plaintiff's copyrights and that Plaintiff has "admitted that it has not altered any of its polices or procedure to prevent future infringement." (*Id.* at 9.)   Plaintiff's argument is unconvincing given the facts of this case.

First, the "history" of litigation between the two parties is not as contentious as Plaintiff paints it to be.   In March 1998, Defendant received a cease-and-desist letter from Plaintiff complaining that Defendant's Style 552L/J watch infringed on the "Daytona design."   According to Defendant's president, Jill Kiviat, she had never heard of Brighton nor seen any Brighton designs. (McCloskey Decl., Ex.2, Trial Testimony of Jill Kiviat, 118:1-15).   Defendant voluntarily ceased selling the watch after Plaintiff objected. However, Plaintiff still commenced an action which ultimately settled.   According to Defendants, this was to "avoid future litigation costs" and the settlement contained language that "nothing contained herein shall be construed as an admission by any party of any liability of any kind."  (McCloskey Decl., Ex. 7.)

Second, in the instant case, Plaintiff had discontinued the Laguna design in 2004 and there are no indications from Plaintiff that they seek to resume Laguna sales.   Defendant only sold 287 Cimarron watches, to a single customer, since it started to market them in 2008. Upon receiving notice of Plaintiff's objections, Defendant voluntarily stopped selling the Cimarron watches and returned remaining units to the manufacturer for destruction. (McCloskey Decl., Ex. 2, Kiviat, 159:11-19.)   Moreover, Defendant contends that it took affirmative steps to assure watches purchased from its supplies did not violate Brighton copyrights.

Third, Plaintiff makes the conclusory assertion that its reputation and goodwill has been and will be harmed by the "widespread marketing of lower cost knockoffs."   Plaintiff failed to proffer specific facts or evidence showing Defendant has caused this result. Notably, Defendant's evidence is telling.   Defendant only made a single sale of a small

11cv0637

number of Cimarron watches to Coldwater Creek (287 units total) which resulted in just 181 units sold to the general public.  In its Reply, Plaintiff emphasizes that its brand and goodwill was harmed by the "widespread advertising of Pedre's knockoff watches" in the Coldwater Creek catalogues.  Again, Plaintiff has not alleged any specific facts or evidence to prove this.  (Doc. No. 105 at 3.)  Moreover, Plaintiff had not sold the Laguna since 2004 and Plaintiff does not give any evidence that the Pedre watch was of a lower quality. The link between Defendant's actions and any damage, past or future, to Plaintiff's reputation appears attenuated at best.

Plaintiff cites to *Designed Skin, LLC v. S&L Vitamins, Inc.,* which found irreparable harm to be established by showing both past infringement and the threat of future infringement.  2008 WL 4174882, at *5 (D. Ariz. Sept. 5, 2008).  Plaintiff argues this Court should find the same based on the facts of the instant case.  In *Designed Skin*, the district court noted that the rule it fashions "does not run afoul of eBay's directives." *Id.* (citing *eBay Inc. v. MercExchange, LLC*, which directed Plaintiffs to bear the burden of establishing irreparable harm. 547 U.S. 388, 391 (2006)).  While the Court finds this rule persuasive, Plaintiff does not appear to have satisfied its burden of showing the threat of future infringement beyond mere conclusory assertions.  Plaintiff states that Defendant is likely to infringe again given the fact that it has not altered any internal polices.  Such bald assertions do not appear to amount to a tangible threat of future infringement.

Cases involving the actual tangible threat of infringement involve facts such as: (1) willul disregard of a plaintiff's copyrights[1]; (2) continuing infringement despite calls, letters, and cease and desist notices[2]; (3) *repeated* current and past acts of infringement[3]; (4) a

---

[1]*Broadcast Music, Inc. v. McDade & Sons, Inc.* 928 F. Supp. 2d 1120, 1136 (Mar. 6, 2013, D. Ariz).

[2]*Id.*

[3]*Society of the Holy Transfiguration Monastery, Inc. v. Gregory*, 780 F. Supp. 2d 121 (D. Mass. 2011).

11cv0637

retailer's continued sale and distribution of *thousands* of counterfeit copyrighted items[4]; and (5) substantial likelihood of future infringement given that copyrighted items remained within defendant's customer files which could be easily reproduced[5].  None of these instances of a "tangible threat" of future infringement exists under the facts of the present case.

## 2. Inadequate Remedies at Law

"[T]he requisite analysis for the second factor of the four-factor test inevitably overlaps with that of the first...." *eBay,* 500 F. Supp. 2d at 582; *see also 800 Adept, Inc. v. Murex Securities, Ltd.,* 505 F. Supp.2d 1327, 1336–37 (M.D. Fla.2007) (quoting *Lewis v. S.S. Baune,* 534 F.2d 1115, 1124 (5th Cir.1976) (" '[o]ften times the concepts of 'irreparable injury' and 'no adequate remedy at law' are indistinguishable' in the context of a permanent injunction.")).  Thus, the Courts analysis for this prong will parallel the analysis for irreparable harm. Inadequacy can be shown where the infringing party will be unable to pay statutory damages or where a legal remedy would require a multiplicity of suits. *Metro-Goldwin-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1219-20 (C.D. Cal. 2007).

For many of the same reasons above, Plaintiff fails to establish that the remedies at law are inadequate to address any harm.  After a three day trial, a jury reached a verdict finding Defendants committed non-willful infringement and awarded Plaintiffs $16,719.50. First, there are no indications that Defendants are unable to pay the statutory damages. Second, as stated and reasoned above, Plaintiff's contention that it is under a future threat of infringement is questionable.

The instant case has undeniably put Defendants on notice. It would be absurd for Defendant to even think about committing another act of infringement.  If Defendant did commit further infringement, then undoubtedly a jury in the future would find willful infringement and award damages accordingly.  A future court may even find injunctions

---

[4]*Disney Enterprise, Inc. v. Away Discount*, 778 F. Supp. 2d 157 (D. Puerto Rico 2010).

[5] *Phoenix Renovation Corp. v. Rodriguez,* 461 F. Supp. 2d 411, 424 (E.D. VA, 2006).

proper and necessary to protect Plaintiff.

**3. Balance of the Hardship**

For the third factor, the Court must consider the hardships a grant or denial of permanent injunctions may cause. As an initial matter, the Court is concerned with the broad scope of the permanent injunction requested. Plaintiff asks the Court to permanently enjoin Defendant from infringing any of the watch designs in its Watch Me! catalogue, attached as Exhibit 11 to the Motion.[6] Plaintiff has not established that it owns copyrights to all of the watch designs featured. It doesn't take a detailed survey of the watch display case in any department store to realize that many different manufacturers use common design elements. To order such broad injunction may effectively put Defendant out of business. The Court does not find such an over-encompassing injunction to be appropriate.

The Court is mindful of the great pride Plaintiff takes in its "unique" designs and goodwill with customers. The Court is sympathetic to Plaintiff's concern that Defendant's past infringement may have harmed its reputation in the eyes of some of its loyal customers. However, a balance of the hardships does not appear to favor Plaintiff's request. Indeed, to order such an all encompassing injunction would amount to an unnecessary restraint of trade on Defendant. There is a complete lack of any substantial likelihood of future infringement. Given the facts of this case, Plaintiff is simply under no "threat" that warrants this Court to grant a permanent injunction.

**4. Interest of the Public**

Finally, the Court must ensure that the public interest will not be disserved by the grant of a permanent injunction. In support of its Motion, Plaintiff argues that the public interest favors upholding copyright protections. While it is true that the public interest "can only be served by upholding copyright protections and correspondingly, preventing the misappropriation of skills, creative energies and resources which are invested in the protected work." *Apple Computer Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3rd Cir. 1983). However, Plaintiff has not established copyright ownership for the

---

[6]There are seventy-four (74) designs.

requested designs, except the Laguna and Daytona designs. Furthermore, Plaintiff has not established the need to prevent any likely future misappropriation.

Again, the Court emphasizes its wariness in granting such a prophylactic and broad injunction. Defendant's argument that many watch designs are a combination of common design elements is persuasive. A quick scan of Plaintiff's Watch Me! catalogue supports that contention.[7] Many of the watch designs contain the same features: shapes, patterns, arrangements of design elements, and so forth. To grant the requested injunction would not encourage innovation, instead it would it would stifle fair competition and in turn, impair the public interest.

**IV. CONCLUSION**

In weighing all the equitable factors in the instant case, the Court finds the grant of a permanent injunction unwarranted given the facts. For the foregoing reasons, the Court DENIES Brighton's Motion for Permanent Injunction. With this matter resolved, the Court orders the entry of judgment in favor of Plaintiff, Brighton Collectibles, Inc. and against Defendant Pedre Watch Company, Inc. In the amount of $16,719.50.

IT IS SO ORDERED.


DATED:  October 21, 2013


Hon. Anthony J. Battaglia
U.S. District Judge

[7] Plaintiff's Mot., Ex. 11.