UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| BRIGHTON COLLECTIBLES, INC., a Delaware Corporation, | ) ) ) | Case No.: 11cv00637 AJB (WVG) |
| Plaintiff, | ) ) | ORDER: |
| v. | ) ) ) | (1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND PREJUDGMENT INTEREST; (Doc. No. 112), and |
| PEDRE WATCH COMPANY, INC., a New York Corporation, et al., | ) ) ) | |
| Defendants. | ) ) ) ) | (2) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR COSTS (Doc. No. 115). |
| _____ | ) | |

Before the Court are two motions: (1) Brighton Collectibles, Inc's (hereinafter "Brighton" or Plaintiff) Motion for Attorneys' Fee and Prejudgment Interest pursuant to Federal Rule of Civil Procedure 54(d)(2) and the Copyright Act, 17 U.S.C. § 505 and (2) Pedre Watch Company, Inc.'s (hereinafter Pedre or Defendant) Motion for Costs pursuant to Federal Rule of Civil Procedure 68. (Doc. Nos. 112 and 115.) The Court entertained oral arguments on December 19, 2013. After considering the motions, the respective briefs filed in support and opposition, and the parties' arguments offered during the hearing, the Court GRANTS in part and DENIES in part both motions, with the limitations explained herein.

# I.    BACKGROUND

On March 30, 2011, Brighton commenced this action against Pedre alleging one claim of copyright infringement.  Brighton alleged that Pedre's "Cimarron" watch infringed Brighton's "Laguna" watch copyright.  This was not the first time the parties were engaged in a copyright infringement dispute.  In 1998, the parties were involved in another litigation over Pedre's alleged infringement of Plaintiff's "Daytona" watch design. (Doc. No. 96 at 3.)  Pedre contends that it had never heard of Brighton nor seen Brighton designs until Plaintiff sent its cease-and-desist letter in March 1998.  Pedre had obtained the allegedly infringing watch from Full Field Industrial Limited, a Hong Kong company.  Pedre voluntarily ceased selling the allegedly infringing watch after Brighton made its objections known. (Doc. No. 102 at 2.)  However, Brighton commenced an action in October 1998. According to the Pedre, that action settled to "avoid future litigation costs," and the parties agreed that the settlement was not to be construed as an admission of liability. (*Id*)

In 2008, Pedre purchased the Cimarron watch design, the subject of the current case, from its supplier, Universe Watch Trading Co., Ltd. in Hong Kong.  In selecting the design, Pedre's president, Jill Kiviat, specifically told the supplier she "did not want to buy anything that was like Brighton." (*Id.* at 5.)  The supplier had informed her the Cimarron design was made for a South American customer and was not being sold in the United States. (*Id.*)  At that time, Brighton had not offered the Laguna for sale for more than four years.  However, Brighton argued that "Pedre simply did a cursory scan of Brighton's website, saw that Brighton was no longer selling the Laguna, and pressed forward." (Doc. No. 96 at 6.)

Pedre then made a single sale of 287 watches to its customer, Coldwater Creek.  Coldwater Creek then began to advertise the watch in its nationwide catalogs. (Doc. No. 102 at 3-4.)  In September of 2008, Coldwater Creek informed Pedre that Brighton alleged the Cimarron infringed on their copyright.  After receiving notice of Brighton's claims, Pedre accepted the return of Coldwater Creek's remaining inventory. A total of

181 units were sold to the public, all remaining units were returned to the manufacturer for destruction. (*Id.* at 4.)  Brighton filed an action against Coldwater Creek over the Laguna design.  That action settled. (*Id.*)  Brighton then commenced the instant action against Pedre in this Court.

On September 16, 2011, in an effort to nip the matter in the bud, Pedre offered to submit to an entry of judgment against it pursuant to Rule 68. (*See* Doc. No. 115, Ex. 1.) Pedre offered the payment of fifty thousand dollars ($50,000) as well as an execution of a written agreement that Pedre is no longer selling, and will not sell at any time in the future, the Cimarron watch at issue. (*Id.*)  Brighton did not accept the offer and the parties continued with the litigation.  A three day trial began on August 19, 2013.  The jury returned a verdict for Brighton finding: (1) Brighton did have a valid copyright to the "Laguna" watch design; (2) Pedre copied original elements of the "Laguna" design; (3) the infringement was non-willful; and (4) a judgment of $16,719.50 was the appropriate amount of statutory damages.

This Court then denied Brighton's Motion for Permanent Injunction after finding Brighton failed to satisfy the traditional four-part test to warrant the need for such equitable relief. (Doc. No. 108.)  The Clerk of Court then entered judgment in favor of Plaintiff, Brighton, in the amount of $16,719.50.  (Doc. No. 109.)  On November 18, 2013, the parties timely filed post-judgment motions.  Brighton now seeks to recover attorneys' fees and prejudgment interest pursuant to the Copyright Act, 17 U.S.C. § 505 and Pedre seeks to recover costs pursuant to Rule 68.  The Court addresses each motion in turn.

## II.    LEGAL STANDARD

### A.    The Copyright Act of 1976, 17 U.S.C. § 505

Federal Rule of Civil Procedure 54(d)(2) permits a party to claim attorney's fees by motion under a substantive law.  Section 505 of the Copyright Act grants district courts the discretion to award reasonable attorney's fees to the prevailing party in a copyright action. 17 U.S.C. § 505.  "In copyright infringement cases, generally, the

prevailing party is the one who succeeds on a significant issue in the litigation that achieves some of the benefits the party sought in bringing the suit." *Wall Data Inc. v. Los Angeles Cnty. Sheriff's Dept.*, 447 F.3d 769, 787 (9th Cir. 2006).

Prevailing parties are to be awarded their reasonable attorney's fees as a matter of the court's discretion. *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 557 (9th Cir. 1996). There is no exact formula and courts are to make their determination under equitable circumstances. *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, 114 S. Ct. 1023 (1994). The guiding principle for courts is the promotion of the Copyright Act's objectives. *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1556 (9th Cir. 1989). A plaintiff bears the burden of showing the time spent and that it was "reasonably necessary to the successful prosecution of their copyright claims." *Id.* at 1557.

A court must first determine whether awarding attorney's fees is appropriate. This is a matter for the district court's discretion and to guide that discretion, the Supreme Court has endorsed the non-exclusive list employed by the Third Circuit in *Lieb v. Topstone Industries, Inc.*, 788 F.2d 151, 156 (3d Cir. 1986). *See Fogerty*, 510 U.S. at 527. The Ninth Circuit identifies those factors as: (1) the degree of success obtained; (2) frivolousness; (3) motivation; (4) objective unreasonableness; and (5) the need in the particular circumstances to advance considerations of compensation and deterrence. *Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1432 (9th Cir. 1996) (quoting *Jackson v. Axton*, 25 F.3d 884, 890 (9th Cir. 1994)).

A court must then determine whether the fees requested are reasonable. "To determine what fee should be awarded, the court must first determine the 'lodestar,' which is the number of hours reasonable expended on litigation multiplied by a reasonable rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 406 (9th Cir. 1990). Under this calculation, a court should take into account, either under the reasonable hours component or the reasonable rate component, (1) the novelty and complexity of issues; (2) the special skill and experience of counsel; (3) the quality of representation; (4) the results obtained; and (5) the contingent nature of the fee

agreement." *Morales v. City of San Rafael*, 96 F.3d 359, 364 (9th Cir. 1996).  The court may then adjust this amount "on the basis of other considerations." *Lytle v. Carl*, 382 F.3d 978, 988 (9th Cir. 2004).

### B.   Rule 68

Rule 68 of the Federal Rules of Civil Procedure shifts to a plaintiff all "costs" incurred subsequent to an offer of judgment not exceeded by ultimate recovery. Fed. R. Civ. P. 68(d) ("If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made."). The purpose of Rule 68 is to encourage settlement and avoid litigation.

Where a statute defines "costs" to include attorney's fees, such fees are to be included as costs for purposes of Rule 68 cost shifting. *Marek v. Chesny*, 473, U.S. 1, 8-9 (1985) (concluding "that the term 'costs' in Rule 68 was intended to refer to all costs properly awardable under the relevant substantive statute or other authority.") Thus, a plaintiff who rejects an offer more favorable than what is thereafter recovered at trial will not recover attorney's fees for services performed afterwards.  *Id.*

## III.   DISCUSSION

The matter of awarding attorney's fees and costs to the respective parties is complicated by the interplay of Rule 68 and § 505.  As such, the Court's analysis for each individual motion will necessarily overlap.  After a thorough review of the litigation record, relevant case law, and the parties' contentions, the Court has reached a resolution under the circumstances, that will serve the purposes of both the Copyright Act and Rule 68.

### A.   Brighton's Motion for Attorney's Fees

For Brighton to collect its attorney's fees, Brighton must: (1) be the prevailing party under the definition of the Copyright Act; (2) satisfy the *Fogerty* five factor analysis; and (3) seek a reasonable amount.  Moreover, with the interplay of Rule 68, if the offered amount was greater than what Brighton ultimately recovered, Brighton must bear its own attorney's fees incurred post offer date.

11cv637

1         1.    <u>Brighton is the prevailing party</u>

2         The material alteration test governs the prevailing party inquiry for an award of

3    attorney's fees under the Copyright Act. *Cadkin v. Loose*, 569 F.3d 1142, 1149 (9th Cir.

4    2009).  This inquiry defines a prevailing party to mean one "who was awarded some

5    relief by the court." *Buckhannon Bd. And Care Home, Inc. v. West Virginia Dept. Of*

6    *Health and Human Resources*, 532 U.S. 598, 603, 121 S. Ct. 1835 (2001).  The key

7    inquiry is whether some court action has created a "material alteration of the of the legal

8    relationship of the parties." *Id.* at 604 (internal quotation marks omitted).  Ninth Circuit

9    case law holds that "attorney's fees may be properly denied where plaintiff's success on

10   a legal claim can be characterized as purely technical or de minimis . . . De minimis

11   judgments are those that confer no right on the party - those that do not affect the

12   obligations of the defendants toward the plaintiff." *Park, ex rel. Park v. Anaheim Union*

13   *High School Dist.*, 464 F.3d 1025, 1246 (9th Cir. 2006) (citation and internal quotation

14   marks omitted).

15        The parties disagree on who is the "prevailing party."  Pedre contends that, despite

16   the ultimate adverse entry of judgment,  it is the prevailing party as it "prevailed on all

17   but one issue at trial". (Doc. No. 117 at 8.)  Despite its valiant effort and creative

18   argument, the Court is unpersuaded by Pedre's position.  By a jury decree, Pedre was

19   found liable to Brighton for infringement.  "The plaintiff will ordinarily be regarded as

20   the prevailing party if he succeeds at trial in establishing the defendant's liability, even if

21   the damages awarded are nominal or nothing." *Wall Data*, 447 F.3d at 787 (quoting

22   Nimmer on Copyright § 14.10[B][3], at 14-207).  Brighton's success was not de minimis,

23   instead it was on the merits.  The rights between the respective parties were indeed

24   altered by the jury verdict in favor of Brighton.  Thus, Brighton is the prevailing party.

25   However, prevailing does not mean an automatic award of attorney's fees. *Fantasy*, 510

26   U.S. at 533 ("The word 'may' [in the Copyright Act] clearly connotes discretion.").

27   *//*

28

2.   The Ninth Circuit's *Fogerty* Test

After considering the equitable factors as stipulated by the Ninth Circuit as well as other considerations unique to the facts at hand, the Court finds that Brighton should be awarded some of its attorney's fees.

First, in weighing the degree of success in the lawsuit, the Court finds this factor in favor of Brighton.  Brighton prevailed on the merits, not on some technical matter. *Fantasy*, 94 F.3d at 559.  Thus, despite Pedre's characterization that it won a majority of the issues in this action, the first factor weighs in favor of Brighton.

Second, in examining whether the underlying suit was frivolous, the Court cannot reasonably conclude the underlying suit was such.  Brighton did not lack a legitimate claim, as the conclusion of the jury trial resulted in a favorable verdict for Brighton. Thus, this second factor weighs in favor of Brighton.

Third, in considering the objective reasonableness of the parties' claims, both the factual and the legal components of the case, the Court cannot declare that Brighton was objectively unreasonable in pursuing its claim.  As noted above, Brighton did not lack a legitimate claim.  Brighton was able to prove to a jury all the elements necessary to establish a claim of copyright infringement, albeit non-willful infringement.

Fourth, in determining whether Brighton demonstrated a bad faith motivation in litigating the case, the Court cannot conclude Brighton did so.  Courts have held a plaintiff demonstrates bad faith when alleging copyright claim to secure benefits other than merely addressing grievances. *E.g.*, *Maljack Prod., Inc. v. GoodTimes Home Video Corp*, 81 F.3d 881, 889 (9th Cir. 1996) (finding an improper motivation where evidence demonstrated that plaintiff brought lawsuit in effort to expose defendant to risk and to secure competitive advantage in the market).  Here, the Court cannot declare Brighton brought this action in bad faith or as an attempt to harass Pedre.  Brighton, understandably, wanted to establish and secure its copyrights.  Although Brighton was likely overzealous, and perhaps should have accepted the early settlement offer, Brighton did have the right to vindicate its claim before a jury.

11cv637

Finally, in looking to see whether an award for the moving party would "advance considerations of compensation and deterrence," the Court finds this factor neither favors nor disfavors Brighton.  Brighton argues that this is the quintessential case to award fees, as the ultimate judgment was significantly smaller than what it was forced to expend to enforce its copyright. (Doc. No. 112 at 14-15.)  Brighton contends an award of fees will serve the purpose of the Copyright Act by encouraging private enforcement and deterring infringements. (*Id.* at 14.)  Moreover, Brighton argues fees are necessary to "make Brighton whole" as the jury verdict fails to place Brighton in the position it would have been but for Pedre's misconduct. (*Id.* at 15.)

After considering both parties' argument, the Court finds this last factor neutral to its analysis.  First, Brighton ceased sales of its Laguna design in 2004, there were and still are no indications that Brighton will resume sales of the Laguna watch.  Simply put, Brighton did not excessively suffer in terms of lost profits and Brighton was unable to establish damage to its reputation. (*See* Doc. No. 108 at 4-6.)  Second, Pedre voluntarily ceased selling the Cimarron watch and destroyed all remaining unsold units when it was first notified of the possible infringement.  Moreover, Pedre made little profit as it only sold 181 watches to the public since it began marketing them in 2008.  It should be noted that the Rule 68 offer included an agreement whereby Pedre would never sell the Cimarron watch again.  As the Court concluded in its order denying permanent injunction, there does not appear to be an immediate and palpable threat of future infringement given the facts of the instant case. (*Id.* at 6-7.)  Although awarding fees will likely deter future infringement in the general sense, there is little likelihood of future infringement to begin with under the factual consideration of this case.  Thus, this factor does not tip in favor of one party over the other.

In weighing all the equitable factors, the Court concludes that Brighton is entitled to some of its requested attorney's fees.  Determining the appropriate amount is the Court's next task.

//

11cv637

### 3.   Reasonableness of Attorney's Fees

Brighton requests a total of $312,373.40 with an average rate of $473.29 per hour. Brighton argues that its request is supported by the evidence and reasonable under the circumstances.  Brighton has referred the Court to case law finding rates in excess of $500 to be reasonable and has submitted  detailed billing statements of the work done for trial. (Doc. No. 112 at 17-18; Ex. H.)  However, Pedre contends the billing rates are unreasonable as they are substantially higher than what courts in this district permit. (Doc. No. 117 at 18-19.)  Pedre takes particular issue with the rate of Mr. Keith Wesley. At $525 an hour and with less than ten years of experience, Pedre questions why Mr. Wesley receives a significantly higher rate than Mr. Steve Winton, local counsel for Brighton and with over twenty years of experience.  Pedre believes that a more appropriate average rate should be $350. (*Id.* at 21.)   After considering the lodestar factors, the Court finds that utilizing the individual rates, rather than an overall average rate, would be the most appropriate method.

First, this case involved just one claim of copyright infringement.  It did not involve an area of law with little or no precedent, moreover the case did not involve complex claims and defenses.  The Court takes note of the average rate of $367 per hour approved by Judge Marilyn Huff in *Brighton v. Coldwater*, 2009 WL 160235.  Many of the same attorneys for Brighton were involved in that case.  However, *Coldwater* involved not only copyright infringement, but trade dress infringement, false designation of origin, and unfair competition under the common law and statutory authority. Furthermore, a jury returned a verdict for Brighton finding Coldwater willfully infringed on Brighton's copyright and engaged in unfair competition with fraud, malice, or oppression.  Special damages of over $5 million and wrongful profits over $1 million were awarded.  The complexity and degree of success in the instant case is by no means comparable to that achieved in *Coldwater.*

Second, no one denies that counsel for Brighton were experienced and strong advocates for their client's position.  Mr. Peter Ross is a highly qualified litigator, and

with over 30 years of practicing commercial litigation, the Court finds his rate reasonable as he was lead counsel and held a supervisory role.  However, the Court agrees with Pedre's position that Mr. Welsey's rate is likely too high.  The Court carefully reviewed the billing statements, and after considering the type of work Mr. Wesley performed, the Court finds that a rate of $400 an hour to be more appropriate.  As Pedre does not dispute the rate for Mr. Winton, the Court concludes that $375 is reasonable for his services.

4.    Interaction with Rule 68

The instant motion is complicated by the interaction of Rule 68.  On September 16, 2011, just six months after the initiation of this action, Pedre submitted an entry of judgment and settlement offer of $50,000 pursuant to Rule 68. The offer included  an execution of a written agreement that Pedre is no longer selling, and will not sell at any time in the future, the Cimarron watch at issue.

As stated above, absent congressional expression to the contrary, where the underlying statute defines "costs" to include attorney's fees, such fees are to be included as costs for purposes of Rule 68. *Marek*, 473 U.S. 8-10.  Section 505 of the Copyright Act states, "[e]xcept as otherwise provided by this title, the court may also award a reasonable attorney's fees to the prevailing party as part of the costs."  Thus, given the Supreme Court's dictate in *Marek*, and the plain language of § 505 defining attorney's fees as part of costs, Brighton's attorney's fees incurred post settlement offer must be shifted onto itself if its final judgment is less than what was offered. *See* William F. Patry, Patry on Copyright § 22:217 ("Rule 68 [can] be used as a sword against plaintiff to deny plaintiff his attorney's fees postoffer.").

As an initial matter, the Court finds Pedre's Rule 68 offer a valid one.  It was not ambiguous and contained a definite sum.  (*See* Doc. No. 115, Ex. A.)  In arguing against any fee shifting, Brighton contends that its final judgment is actually more favorable than the settlement amount because (1) Brighton is entitled to pre-offer fees and costs and (2)

11cv637

1  the value to Brighton of the jury verdict finding liability is far greater than any amount

2  offered. (Doc. No. 121 at 4.)

3        Under Local Rule 54.1.d, a court may consider any pre-offer costs and fees to

4  which the plaintiff is entitled as a part of the total amount of judgment.  Brighton

5  disputes Rule 68's limitation on its recovery and has not provided the Court with a

6  definitive amount of its pre-Rule 68 fees and costs.  Pedre calculated this amount to be

7  $32,052.50 based on Brighton's evidence submitted in support of their motion for fees.

8  The Court independently assessed the pre-Rule 68 costs and fees and did not arrive at a

9  number close to this figure.[1]  In any case, the best scenerio for Brighton in totaling its

10  pre-Rule 68 offer fees and costs would be $32,052.50.  Thus for purposes of just

11  determining whether the Rule 68 offer is more favorable, the Court will use the number

12  most favorable to Brighton, that being $32,052.50.  Then, adding the ultimate jury award

13  of $16,719.50, the total amount Brighton would "ultimately recover" as of the making of

14  the Rule 68 offer is $48,772.00, less favorable than the settlement offer itself.[2]

15        As to Brighton's second contention, the Court does not find it appropriate to

16  "value" and take into account the jury finding of liability.  In light of the difficulty of

17  comparing apples to oranges, some courts will only consider monetary damages awarded

18  to monetary damages offer. *See e.g.*, *Real v. Continental Group Inc.*, 653 F. Supp. 736

19  (N.D. Cal. 1987) (noting that due to the imprecise nature in valuing nonpecuniary relief

20  and the lack of guidance from higher courts, the proper course is to compare monetary

21  awards only). The Court reaches this conclusion without needing to address the debate as

22  to whether nonpecuniary relief should ever factor into a court's Rule 68 analysis.

23        First, as a practical matter, to appraise the jury verdict is impossible given the

24  record before the Court.  The Court would have to embark on a lengthy evidentiary

25  analysis which would most likely include a battle of the parties' experts, thereby causing

26

27      [1] In trying to determine where the discrepancy arose, the Court noted an August 2011 bill where there was an unexplained $6,100 charged by Browne George Ross LLP.

28      [2]Again, this calculation is only for purposes of determining the favorability of the offer compared to judgment.

11cv637

1   unnecessary delay and racking up even more fees for both sides.  Second, Brighton has

2   not, and this Court did not, find any authority where a Court takes into account the

3   subjective value of a jury verdict finding infringement to the prevailing party.  Brighton

4   cites to *Reiter v. MTA New York Transit Authority*, 457 F.3d 224 (2d Cir. 2006) to

5   support its position that we must factor in the non-monetary relief it received in this case.

6   (Doc. No. 121 at 6.)  However, *Reiter* is a non-controlling opinion from the Second

7   Circuit and is easily distinguishable from the facts at hand.  In *Reiter,* the Second Circuit,

8   concluded that plaintiff's equitable relief should factor into the district court's analysis of

9   whether the ultimate judgment received was worth more than the Rule 68 offer.[3]  457

10  F.3d at 232.  In the instant case, Brighton did not obtain equitable relief, indeed the

11  Court denied its motion for permanent injunction. (Doc. No. 108.)  Moreover, with

12  *Reiter*, there was a potential for the court to calculate what the equitable relief was

13  worth, e.g., look at salary of reinstated position and monetary value of other executive

14  perks.  Here, the Court has no practical means to establish the worth of the jury finding.

15  While the Court believes that it may be appropriate in some circumstances to consider

16  the equitable relief obtained for purposes of determining the favorability of a judgment,

17  this is not one of those times as Brighton has not received such relief. [4]

18       Thus, the Court finds that Brighton's ultimate judgment is not more favorable than

19  the unaccepted Rule 68 offer of settlement. All fees subsequent to the offer date must be

20  shifted.  After meticulously scrutinizing the submitted attorney's fees bills the Court

21  finds the following rates and pre-Rule 68 offer totals proper:

22

23

24     [3] Plaintiff in *Reiter* prevailed in a Title VII retaliation claim but only obtained monetary damages
25  award of $10,000, less than the offer of $20,001 from defendant he rejected.  However, plaintiff also
    obtained equitable relief from the court, including reinstatement, return of his corner office with an
26  assistant, and other perks lost when he was demoted. *Reiter*, 457 F.3d at 229-231.

27     [4] To the extent it is argued that there was extra deterrent value from the verdict to consider in the
    context of the Rule 68 analysis, it is noted that the second part of the Rule 68 offer was for the execution
28  of a written agreement that confirmed that Pedre is no longer selling, and will not sell at any time in the
    future, the Cimarron watch at issue. This consideration was of relatively equal value and would not
    change the analysis.

| Individual | Hours | Rate | Total |
|---|---|---|---|
| JP [5] | .10 | $210 | $21.00 |
| Steve Winton | 4.4 | $375 | $1,650 |
| Peter Ross | 3.25 | $625 | $2,031.25 |
| Keith Wesley | 34 | $400 | $13,600 |
| Melinda Dodge | 2.25 | $180 | $405 |
| **TOTAL** | | | **$17,707.25** |

**B.     Brighton's Request for Prejudgment Interest on the Jury Award**

Brighton requests prejudgment interest under the Copyright Act. (Doc. No. 112 at 19-20.)  The Ninth Circuit permits awards of prejudgment interest, but this interest may only be awarded in situations of "indisputable infringement," in order to "discourage needless delay and compensate the copyright holder for the time it is deprived of lost profits or license fees." *Polar Bear Prod., Inc. v. Timex Corp.*, 384 F.3d 700, 718 (9th Cir. 2004).  Courts generally award prejudgment interest out of the belief that the defendant has had the benefit of plaintiff's money from the date of the infringement until entry of judgment, thus that profit must be disgorged to make plaintiff whole. *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1552 (9th Cir. 1989).

In light of the above considerations and the entire record before it, the Court exercises its discretion to deny an award of prejudgment interest.  As stated above, Brighton ceased sales of the Laguna watch in 2004, four years before Pedre started to market and sell its Cimarron design.  Therefore, this is not a situation where Pedre had the benefit of Brighton's money and therefore Brighton's profits.  Moreover, Pedre's decision to fully litigate against any alleged infringement was not needless delay, the Court cannot construe of any misconduct on the part of Pedre to warrant the granting of prejudgment interest.  The Court finds a final judgement of $34,426.75 for Brighton is the appropriate amount, the total of its jury award ($16,719.50) and reasonable attorneys'

---

[5] Paralegal with Law Offices of Gary Freedman.

1   fees and costs ($17,707.25).  Brighton's Motion for Attorney's Fees post the Rule 68

2   offer are DENIED as is the Motion for Prejudgment Interest.

3   **C.    Pedre's Motion for Costs Pursuant to Rule 68** [6]

4          As noted above, Rule 68 expresses a clear policy of favoring the settlement of

5   lawsuits. *Marek v. Chesny*, 473 U.S. 1, 6 (1986).  Thus, where a plaintiff rejects an offer

6   of judgment, she is faced with the possibility of (1) paying defendant's post-offer costs

7   and (2) being precluded from recovering her own post-offer costs. Fed. R. Civ. P. 68(d).

8   Section 505 does not define costs, but the Supreme Court has held that unless defined,

9   "costs" are to be determined by looking to 28 U.S.C. § 1920. *See Crawford Fitting Co. v.

10  J.T. Gibbons, Inc.*, 482 U.S. 437, 445, 107 S. Ct. 2494 (1987).  The Court has already

11  concluded that Brighton's total judgment award is not greater than the settlement offer.

12  Therefore, under Rule 68, Pedre is entitled to its post-offer costs.  Pedre asks the Court to

13  award it $69,448.86, which includes fees for: (1) services of process; (2) depositions; (3)

14  witness fees; (4) expert fees; (5) exemplification and copies of papers; and (6)

15  transcripts. (Doc. No. 115; Ex. B.)

16         The Court finds that Pedre is entitled to the requested service of process fees,

17  deposition costs, and lay witness fees.  Pedre has submitted detailed invoices and

18  explanations as to why they were incurred, therefore the Court finds them proper under

19  the applicable law and Local Rules. *See* Local Rule 54.1.b.  The $2,490.33 requested for

20  exemplification and copies are proper as well.  Pedre has submitted invoices and

21  explained the costs were for copies of papers and exhibits to be used at trial and lodged

22  with the Court, thus falling under the permitted costs of Local Rule 54.1(b)(6)(a).

23         However, per Local Rule 54.1(b)(2), costs for trial transcripts should not be

24  awarded.  Trial transcript costs are not normally allowable unless one of three exceptions

25

26          [6] In connection with their motion for costs, Pedre asks this Court to take judicial notice of: (1)
    certain Court documents filed with *Brighton Collectibles, Inc. v. Coldwater Creek Inc.*, Case3:08-cv-
27  2307; (2) Special Verdict Form for the instant case (Doc. No. 95); and (3) Letter by the Copyright Office
    rejecting registration for the Laguna Design. (*See* Doc. No. 120, Exs. A-C). Exhibits A and C were
28  unnecessary for the Court's analysis and Exhibit B does not require judicial notice as it is part of the
    docket for the instant case.  Therefore, the Court declines to take judicial notice as it is unnecessary for
    the instant motions.

apply.  None do in this case, moreover the transcripts do not appear to have been approved by the Court nor stipulated to be recoverable.  Finally, the Court finds the requested expert witness fees improper.  Pedre seeks $5,552.50 for Scott Hampton and $21,338.23 for Bruce Isaacson.[7] (Doc. No. 115, Ex. B.)  Relying on § 505 of the Copyright, Pedre argues it is entitled to this amount as it was necessitated by Brighton's predatory litigation tactics. (Doc. No. 125 at 6-10)

The Eighth and Eleventh Circuits have explicitly ruled that expert witness fees beyond the $40 per day limit outlined in 28 U.S.C. § 1821 are not permitted. *See Pinkham v. Camex, Inc.*, 84 F.3d 292, 295 (8th Cir. 1996) (concluding costs under 17 U.S.C. § 505 are limited to the costs expressly identified in 28 U.S.C. § 1920, and that expert witness fees in excess of the $40 limit are not recoverable); *Artisan Contractors Ass'n of America Inc. v. Frontier Ins. Co.*, 275 F.3d 1038, 1039 (11th Cir. 2001) (affirming the approach taken by the Eighth Circuit).  However, the Ninth Circuit has held that non-taxable costs, including those lying outside the scope of § 1920, may be awarded under § 505. *Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869, 885 (9th Cir. 2005).  However despite following Ninth Circuit dictate, Pedre is still unable to recover its full expert fees in the instant case.

*Twentieth Century* construed the words "full costs" in § 505 to reach the conclusion that district courts may award "otherwise non-taxable costs, including those that lie outside the scope of § 1920, *under § 505*." *Id.* at 884 (emphasis added).  The key is that this holding necessarily relies on the substantive statute, the Copyright Act, 17 U.S.C. § 505.  Recall that *Marek* stated a district court can shift costs that are "properly awardable" under the substantive statute.  However, the Ninth Circuit construed the phrase "properly awardable" to limit the award of fees under Rule 68 to situations where such fees are "properly awardable" under the substantive statute. *Champion Produce Inc. v. Ruby Robinson Co., Inc*, 342 F.3d 1016, 1031 (9th Cir. 2003) (joining the First

---

[7] Pedre initially sought $52.338.23 for Dr. Isaacson, but withdrew a portion of this amount in its Reply. (Doc. No. 125.)

and Seventh Circuits in holding Rule 68 costs "do not include a non-prevailing defendant's post-offer attorneys' fees when the underlying statute awards attorneys' fees to a prevailing party.")  Therefore the terms of the statute govern. The substantive statute Pedre relies on, § 505, only permits the *prevailing party* to recover costs.  Put simply, by reading *Marek*, *Champion*, and *Twentieth Century* in conjunction, Pedre is not entitled to any costs it seeks under § 505 because Pedre cannot recover them as the non-prevailing party.  Thus, the Court approves of the following costs to be awarded to Pedre:

| Item | Amount |
|------|--------|
| Service of Process | $1,528.80 |
| Depositions | $2,620.06 |
| Lay Witness Fees | $4,224.74 |
| Exemplification and Copies | $2,490.33 |
| **TOTAL** | **$10,863.93** |

## IV.   CONCLUSION

For the foregoing reasons, the Court:

(1) GRANTS Plaintiff's motion for attorneys' fees in the amount of $17,707.25 for the pre-Rule 68 services and DENIES all other fees and costs and DENIES Plaintiff's motion for prejudgment interest; and

(2) GRANTS Defendant's motion for costs in the amount of $10,863.93.

Plaintiff is entitled to its judgment, plus the attorneys' fees and costs granted herein. This totals $34,426.75.  Defendant is entitled to its costs post-Rule 68 offer. This result will not only serve the purposes of the Copyright Act in encouraging private enforcement and deterring infringement, but also the purposes of Rule 68 in encouraging settlement of disputes that may unnecessarily burden all parties involved, including the court.

The Clerk of Court is instructed to enter judgment in favor of Plaintiff, Brighton, accordingly.

11cv637

1          IT IS SO ORDERED.

2    DATED:  January 2, 2014

3                                Hon. Anthony J. Battaglia

                                 U.S. District Judge

17

11cv637